# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL CUARESMA and BRAXTON GRIFFIN, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**SOFTCHOICE CORPORATION,**<br><br>**Defendant.** | **Civil Action No.** |

### JOINT STIPULATION OF SETTLEMENT AND RELEASE AGREEMENT

This Joint Stipulation of Settlement and Release Agreement (together, with the exhibits hereto, the "Agreement") is made and entered into by and between Braxton Griffin and Michael Cuaresma ("Named Plaintiffs"), individually and on behalf of a collective they seek to represent (the Named Plaintiffs and members of the collective they seek to represent are collectively referred to as "Plaintiffs"), and Softchoice Corporation ("Defendant" or "Softchoice") (Plaintiffs and Defendant are referred to herein as, collectively, the "Parties" or individually, a "Party").

### RECITALS

**WHEREAS**, on or about June 28, 2021, Named Plaintiffs, through counsel, notified Defendant of overtime-related claims they intended to file against Defendant on behalf of themselves and similarly situated employees and invited Defendant to explore the potential for pre-litigation resolution of those claims;

**WHEREAS**, Named Plaintiffs and Defendant entered into a Tolling Agreement, effective as of July 19, 2021, to allow them an opportunity to explore potential pre-litigation resolution of the claims raised by Named Plaintiffs;

**WHEREAS**, Defendant provided payroll data to Plaintiffs' Counsel (as defined below) to allow them to calculate potential damages for the asserted claims;

**WHEREAS**, as a result of private settlement mediation before mediator Carol Wittenberg on December 6, 2021, the Parties have agreed to fully and finally resolve this matter on the terms and conditions described herein;

-1-

**WHEREAS**, as a means of seeking Court approval of the settlement, 14 days after this Agreement is fully executed, Named Plaintiffs, on behalf of themselves and others similarly situated, will file a Complaint against Defendant asserting various claims, including claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*;

**WHEREAS**, Defendant denies all of the allegations which were raised or could have been raised in the Action (as defined below) and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action which were asserted or could have been asserted in the Action. Nonetheless, without admitting or conceding any liability or damages, Defendant has agreed to a settlement on the terms set forth in this Agreement to avoid the burden, expense, and uncertainty of litigation; and

**NOW, THEREFORE**, in consideration of the mutual promises set forth in this Agreement, as well as the consideration provided, the Parties agree to a full and complete settlement of the claims which were asserted or could have been asserted in the Action on the following terms and conditions.

## 1. <u>DEFINITIONS</u>

The following terms, as used in this Agreement, are defined as follows:

a. "<u>Acceptance Period</u>" means the 150-day period after initial mailing during which a Participating Settlement Collective Member must sign and cash a Settlement Check.

b. "<u>Action</u>" means the civil action to be filed for settlement purposes in the United States District Court for the Northern District of Illinois, captioned *Cuaresma, et al. v. Softchoice Corporation*.

c. "<u>Applicable Work Weeks</u>" means the weeks worked as a "Territory Sales Representative" (as defined below) during the Class Period.

d. "<u>Approval Order</u>" means an order to be approved and entered by the Court, which approves the Settlement and this Agreement, and enters final judgment, in a form substantially similar to the Proposed Order Approving Collective Action Settlement, attached hereto as Exhibit A.

e. "<u>Complaint</u>" means the Complaint filed to initiate the Action.

f. "<u>Class Period</u>" means the period between June 28, 2018 and October 31, 2021.

g. "<u>Consent to Join/Opt-In Form</u>" means the Consent to Join/Opt-In Form to this Action, attached hereto as Exhibit C.

h. "<u>Court</u>" means the United States District Court for the Northern District of Illinois.

i.        "<u>Defendant's Counsel</u>" means Littler Mendelson P.C.

j.        "<u>Effective Date</u>" means the first date the Approval Order is no longer appealable, which shall be 31 days after the Parties' motion for settlement approval is granted by the Court if no timely appeal of such order is filed, or if an appeal is filed, the date on which such appeal is final.

k.        "<u>Eligible Settlement Collective Member</u>" means Named Plaintiffs and 190 additional persons employed by Defendant as a "Territory Sales Representative" (as defined below) at some point during the Class Period and who are identified in the payroll data produced by Defendant to Plaintiffs' Counsel on November 22, 2021.

l.        "<u>Employer Payroll Taxes</u>" means Defendant's share of taxes which an employer is required to pay arising out of or based upon the payment of wages to Eligible Settlement Collective Members as part of this Settlement, including FICA, FUTA, and SUTA obligations.

m.        "<u>Gross Settlement Amount</u>" means $1,800,000 which is the sum that Defendant has agreed to pay to fully and finally resolve and settle the claims which are asserted or could have been asserted in the Action, including any claim for attorneys' fees and costs approved by the Court, the Settlement Administrator's settlement administration fees and expenses, any and all amounts to be paid to Participating Settlement Collective Members, and any Court-approved Service Awards. Defendant will not be required to pay any more than the Gross Settlement Amount, except Defendant will pay the Employer Payroll Taxes in addition to the Gross Settlement Amount.

n.        "<u>Net Settlement Fund</u>" means the remainder of the Gross Settlement Amount after deductions, payments, and allocations for: (i) the amount paid to the Named Plaintiffs as Service Awards; (ii) the amounts paid to Plaintiffs' Counsel as attorneys' fees and costs; and (iii) the amount paid to the Settlement Administrator for settlement administration fees and expenses.

o.        "<u>Plaintiffs' Counsel</u>" means Werman Salas P.C.

p.        "<u>Participating Settlement Collective Member</u>" means all persons identified in the data produced by Defendant in this Action who worked for Defendant as a TSR during the Class Period, and who also opts into this Action by returning a timely, signed Consent to Join/Opt-In Form to the Settlement Administrator.

q.        "<u>Released Parties</u>" means Defendant and Defendant's direct and indirect parent, subsidiaries and affiliated companies, and their respective officers and directors, including but not limited to Softchoice Corporation.

r.        "<u>Settlement</u>" means the settlement between the Parties which is embodied and contained in this Agreement.

s.        "<u>Settlement Account</u>" means a Qualified Settlement Fund ("QSF") established and controlled by the Settlement Administrator.

t. "Settlement Administrator" means Rust Consulting, Inc.

u. "Settlement Check" means the check issued to each Participating Settlement Collective Member for his or her proportionate share of the Net Settlement Fund.

v. "Settlement Notice" means the document entitled Notice of Settlement and Opportunity to Participate, to be approved by the Court in a form substantially similar to the Notice attached hereto as Exhibit B.

w. "Territory Sales Representative" (hereinafter, "TSR") means the following job titles identified in the payroll data produced by Defendant to Plaintiffs' Counsel on November 22, 2021: Territory Account Executive 1, Territory Account Executive 1 Sr, Territory Account Executive 2, Territory Account Executive 3, Territory Account Executive 4, Territory Account Executive 4 Sr, Territory Account Executive 5, Territory Account Executive 5 Sr, Territory Account Executive Hunter 1, Territory Sales Representative 1, Territory Sales Representative 2, Territory Sales Representative 3, Territory Sales Representative 4, Territory Sales Representative 5, and TSD Hunter.

## 2. **INITIAL PROCEDURAL ISSUES**

a. Binding Agreement

This Agreement is a binding agreement and contains all material terms.

b. Retention and Responsibilities of the Settlement Administrator

i. The Settlement Administrator shall be responsible for, among other things, preparing, printing, mailing, emailing, and texting the Settlement Notices and Settlement Checks as directed by the Court; updating addresses per the U.S. Postal Service's National Change of Address ("NCOA") database; making commercially reasonable searches for new addresses for Eligible Settlement Collective Members whose Settlement Notices and Settlement Checks are returned as undeliverable with no forwarding address; processing Consent to Join/Opt-In Forms and providing copies to the Parties; determining the amount of the Defendant's share of the applicable payroll tax and the amount of all payroll tax deductions to be withheld; providing status reports to Defendant's Counsel and Plaintiffs' Counsel regarding the status of the mailing of the Settlement Notices and Settlement Checks; issuing and mailing checks for Court-approved Service Awards to Named Plaintiffs; wiring Court-approved attorneys' fees and costs to Plaintiffs' Counsel; printing and providing W-2s and 1099 forms as required under this Agreement and applicable law; and for such other tasks set forth in this Agreement or as to which the Parties mutually agree.

ii. The Settlement Administrator shall also establish, control, and maintain the Settlement Account according to the terms of this Agreement, and be responsible for filing all required tax returns for the Settlement Account and paying any taxes due.

iii.     The Parties agree to cooperate with the Settlement Administrator, and to provide accurate information necessary to send the Settlement Notice, Consent to Join/Opt-In Forms, and Settlement Checks in accordance with the terms of this Agreement.

## 3.    MONETARY TERMS OF SETTLEMENT

a.    <u>Settlement Payments</u>

i.     Defendant agrees to pay the Gross Settlement Amount to fully resolve the Action and satisfy all amounts to be paid to Participating Settlement Collective Members, any Court-approved Service Award(s), Plaintiffs' Counsel's Court-approved attorneys' fees and costs, and the cost of the Settlement Administrator. Other than as set forth below in 3(a)(ii) with respect to additionally paying the Employer Payroll Taxes, under no circumstances shall Defendant pay more than $1,800,000.00 as part of this settlement.

ii.     Defendant also agrees to pay the Employer Payroll Taxes separately from the Gross Settlement Amount.

b.    <u>Settlement Amounts Payable as Attorneys' Fees and Costs</u>

i.     In their Approval Motion (as defined below), Plaintiffs' Counsel shall ask the Court to approve payment of up to $600,000 of and from the Gross Settlement Amount as an award of attorneys' fees and a payment of up to $12,500 of and from the Gross Settlement Amount as reimbursement of costs. That amount shall be in full satisfaction of any claim or request for attorneys' fees and costs, and Plaintiffs agree that they shall not seek, and not be entitled to, any additional attorneys' fees or costs incurred in relation to this Action. Defendant agrees that it will not object or otherwise comment on Plaintiffs' Counsel's application for attorneys' fees and costs in this Action.

ii.     In the event that the Court rejects or reduces Plaintiffs' Counsel's application for attorneys' fees and costs, such determination shall not negatively impact the Court's consideration of whether this Agreement represents a fair and reasonable resolution of bona fide disputes under the FLSA. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. If the Court awards less than the requested amount and Plaintiffs' Counsel does not appeal that award, or if Plaintiffs' Counsel appeals the award and the result of that appeal is an award of less than the amount requested, only the awarded amount shall be paid to Plaintiffs' Counsel and shall constitute full satisfaction of Defendant's obligation to pay attorneys' fees and costs in accordance with Section 3. This Settlement Agreement is not conditioned upon the Court's approval of Plaintiffs' Counsel's fees and costs and any amounts that are not approved for fees and costs shall become part of the Net Settlement Fund on the Effective Date.

iii.     All of Defendant's own attorneys' fees, costs and expenses incurred in this Action shall be borne by Defendant.

c.     Service Awards

i.     The Named Plaintiffs Braxton Griffin and Michael Cuaresma will each apply to the Court to receive a $7,500.00 Service Award ("Service Award") for services they have rendered to the Eligible Settlement Collective Members.

ii.     Defendant will not contest the amount sought for the Service Awards.

iii.     Should all or part of the Service Awards sought not be approved by the Court, unapproved amounts shall become part of the Net Settlement Fund.

d.     Distribution of Payments

i.     The amount of each Settlement Check was determined by Plaintiffs' Counsel from the pay records produced by Defendant.

For Eligible Settlement Collective Members who worked outside of Washington State, Plaintiffs' Counsel computed Weekly Earnings by multiplying each TSR's Semi-Monthly Earnings Amount by 24 and dividing that product by 52. The Semi-Monthly Earnings include Earnings Types: Regular, Bonus, Commission, Comm Draw, Non Rec Draw, Non Recoverable Draw, Retro Pay, Sales SPIFF, Spiff and Vacation Pay. Each TSR's Regular Rate of Pay was computed by dividing his or her Weekly Earnings by the number of hours worked per week. The Additional Overtime Premium Rate was computed by dividing the Weekly Commissions by the number of hours worked per week. The Weekly Owed Overtime Wages were computed by multiplying 0.5 times the Regular Rate plus 0.5 times the Additional Overtime Premium Rate by 4 hours per week (calculated for purposes of settlement) over 40.00. The Weekly Owed Overtime Wages were then summed for each TSR's Relevant Work Weeks.

The formula utilized by Plaintiffs' Counsel is as follows:

$$\text{(Semi-Monthly Earnings} * 24) \div 52 = \text{Weekly Earnings}$$
$$\text{Weekly Earnings} \div 44 \text{ Hours} = \text{Regular Rate}$$
$$\text{Weekly Commission} \div \text{Hours Worked per Week} = \text{Additional Overtime Premium Rate}$$
$$44 \text{ Hours Worked per Week} - 40 = \text{OT Hours}$$
$$\text{(OT Hours} * \text{Reg. Rate} * 0.5) + \text{(OT Hours} * \text{Additional Overtime Premium Rate} * 0.5) =$$
$$\text{Weekly Owed OT Wages}$$

For Eligible Settlement Collective Members who worked in Washington State, Plaintiffs' Counsel computed Weekly Earnings by multiplying each TSR's Semi-Monthly Earnings Amount by 24 and dividing that product by 52. The Semi-Monthly Earnings include Earnings Types: Regular, Bonus, Commission, Comm Draw, Non Rec Draw, Non Recoverable Draw, Retro Pay, Sales SPIFF, Spiff and Vacation Pay. Each TSR's Regular Rate of Pay was computed by dividing his or her Weekly Earnings by 40 hours per week. The Additional Overtime Premium Rate was computed by dividing the Weekly Commissions by the number of hours worked per week. The Weekly Owed Overtime Wages were computed by multiplying 1.5 times the Regular Rate plus 0.5 times the Additional Overtime Premium Rate by 4 hours per

-6-

week (calculated for settlement purposes) over 40.00. The Weekly Owed Overtime Wages were then summed for each TSR's Relevant Work Weeks.

The formula utilized by Plaintiffs' Counsel is as follows:

$$(\text{Semi-Monthly Earnings} *24) \div 52 = \text{Weekly Earnings}$$
$$\text{Weekly Earnings} \div 40 \text{ Hours} = \text{Regular Rate}$$
$$\text{Weekly Commission} \div \text{Hours Worked per Week} = \text{Additional Overtime Premium Rate}$$
$$44 \text{ Hours Worked per Week} - 40 = \text{OT Hours}$$
$$(\text{OT Hours} * \text{Reg. Rate} * 1.5) + (\text{OT Hours} * \text{Additional Overtime Premium Rate} * .5) = \text{Weekly Owed OT Wages}$$

In accordance with the settlement, Washington TSRs are entitled to additional damages based upon Plaintiffs' allegations that Softchoice's failed to provide them with a 30-minute meal period and 10-minute rest breaks. Plaintiffs' Counsel multiplied the sum of one 30-minute meal period and a 10-minute rest break by each individual's Regular Rate for each weekday they were employed by Softchoice. For purposes of mediation, Plaintiffs' Counsel estimated meal and rest breaks were denied to applicable Washington TSRs 45% of the time.

  ii. For tax purposes, 50% of each payment to a Participating Settlement Collective Member shall be treated as wages, and 50% of such payment shall be treated as liquidated damages. Payments treated as owed wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholdings and the employee share of the FICA tax, and shall be reported as earned in the year of payment to the Internal Revenue Service under the payee's name and Social Security number on a Form W-2. Payments treated as liquidated damages shall be made without withholdings and shall be reported as earned in the year of payment and, to the extent required by law, under the payee's name and Social Security number on a Form 1099. The Settlement Administrator will issue to Named Plaintiffs and each Participating Settlement Collective Member an IRS Form 1099 for the non-wage statutory damages portion of each Settlement Payment, if required by IRS regulations. The Settlement Administrator will also issue an IRS Form 1099 to Named Plaintiffs for the Service Awards. The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholdings, deciding the appropriate tax rate, issuing the Settlement Checks and the Service Awards, and issuing the Forms W-2 and Forms 1099.

## 4. SETTLEMENT TIMELINE

The Parties agree to the following timeline for the completion of the Settlement and dismissal of the Action:

  a. Within 14 days after this Agreement is fully executed, Plaintiffs' Counsel shall file a Motion for One-Step Approval of Collective Action Settlement and Authorization of Notice (the "Approval Motion"). Plaintiffs' Counsel will provide Defendant's Counsel with a draft of the Approval Motion for review and comment as soon as practicable before filing it with the Court. Defendant will not oppose the Approval Motion. Along with the Approval Motion,

Plaintiffs' Counsel also will file the Agreement, proposed Approval Order, and Settlement Notice. Among other things, the Approval Motion will ask the Court to: (i) issue and enter the Approval Order approving the Settlement as a fair and reasonable resolution of bona fide disputes under the FLSA, (ii) approve the proposed Settlement Notice and Consent to Join/Opt-In Form to be sent to Eligible Settlement Collective Members and the Settlement Notice distribution process, (iii) incorporate the terms of this Agreement, (iv) enjoin <u>Participating Settlement Collective Member</u>s from pursuing Released Claims against Released Parties; (v) approve the requests for Plaintiffs' Counsel's attorneys' fees and costs and the Service Awards, and (vi) enter a final judgment and order of dismissal (the "<u>Final Judgment</u>") dismissing the case without prejudice, with leave to reinstate on or before 60 days after the Effective Date, and in the event a motion to reinstate is not filed on or before 60 days after the Effective Date, the case shall be deemed, without further order or action of the Court, to be dismissed with prejudice.

b.      <u>Production of Class Data</u>: Within seven days after the Effective Date, Defendant will provide the Settlement Administrator an Excel spreadsheet identifying each Eligible Settlement Collective Member by: (1) name, (2) Employee ID #, (3) last known address, (4) personal mobile telephone number (if available) and (5) personal email address (if available). Defendant also will provide the Settlement Administrator with each Named Plaintiff's and Settlement Collective Member's social security number. Defendant will obtain from its HR system (SAP SuccessFactors) any personal email addresses and/or personal mobile phone numbers (if any have been provided to Defendant) for each Eligible Settlement Collective Member and provide that data to the Settlement Administrator. At the same time that Defendant provides the Class List to the Settlement Administrator, Defendant will also provide Plaintiffs' Counsel with summary information as to the number of personal email addresses and personal mobile phone numbers that Defendant is providing to the Settlement Administrator. With the exception of the Settlement Collective Member's social security numbers, the Settlement Administrator will provide Plaintiffs' Counsel the contact information identified in this paragraph for each person who timely returns a Consent to Join/Opt-In Form.

c.      Upon receipt of the Class Data from Defendant, the Settlement Administrator will verify the last known mailing address for each Eligible Settlement Collective Member using the National Change of Address (NCOA) Database, or a comparable database.

d.      Within seven days after the Effective Date, Defendant will deposit $1,800,000 into the Settlement Account. With respect to the QSF, the Settlement Administrator shall: (i) calculate, withhold, remit, and report each Eligible Settlement Collective Member's share of applicable payroll taxes (including, without limitation, federal, state, and local income tax withholding, FICA, Medicare, and any state or local employment taxes), and (ii) satisfy all federal, state, and local income and other tax reporting, return, and filing requirements with respect to the QSF.

e.      <u>Payment of Employer Share of Payroll Taxes</u>: No later than 14 days after the Effective Date, the Settlement Administrator shall determine the Employer Payroll Taxes and shall communicate such amount to Defendant with a detailed explanation of the calculations. No later than seven days after this amount is communicated to Defendant, Defendant will deposit the Employer Payroll Taxes into the Settlement Account. In the event of any dispute as to the

-8-

calculation of the Employer Payroll Taxes, Defendant and the Settlement Administrator shall meet and confer in good faith in an attempt to resolve the dispute. If the dispute cannot be resolved, it shall be submitted to the Court for a final determination. The Settlement Administrator shall: (i) calculate, withhold, remit, and report each Eligible Settlement Collective Member's share of applicable payroll taxes (including, without limitation, federal, state, and local income tax withholding, FICA, Medicare, and any state or local employment taxes), and (ii) satisfy all federal, state, and local income and other tax reporting, return, and filing requirements with respect to the QSF. Defendant agrees to reasonably cooperate with the Settlement Administrator to the extent necessary to determine the Employer Payroll Taxes.

      f.     Within 21 days of the Effective Date, the Settlement Administrator shall distribute the Settlement Notice and Consent to Join/Opt-In Forms to Eligible Settlement Collective Members via First Class U.S. Mail and via email and text (if personal email addresses or cell phone numbers are available) with a link (*e.g.*, DocuSign) to electronically complete such forms.

      (i)     If any Settlement Notice and Consent to Join/Opt-In Form is returned to the Settlement Administrator as undeliverable with a forwarding address, the Settlement Administrator will promptly forward the Settlement Notice and Consent to Join/Opt-In Form to the forwarding address. If any Settlement Notice and Consent to Join/Opt-In Form is returned to the Settlement Administrator as undeliverable without a forwarding address, the Settlement Administrator will conduct a new search for a current address through available databases and will forward the Settlement Notice and Consent to Join/Opt-In Form to the new address obtained in this manner, if any. If, after this second mailing, the Settlement Notice and Consent to Join/Opt-In Form is again returned as undeliverable and if no other forwarding address is provided by the Eligible Settlement Collective Member or is otherwise located before the Acceptance Period ends, the mailing process shall end for that Eligible Settlement Collective Member.

      (ii)     The Settlement Notice will state each Eligible Settlement Collective Member's estimated share of the Net Settlement Amount.

      (iii)     Eligible Settlement Collective Members will have 60 days to return the Consent to Join/Opt-In Form after mailing/emailing by the Settlement Administrator (the "Opt-In Period") – for clarity, timeliness will be determined from the earlier of the postmarked date, email, or SMS sent date Eligible Settlement Collective Members may return their Consent to Join/Opt-In Forms electronically or by U.S. Mail to the Settlement Administrator.

      (iv)     The Settlement Administrator will send out a reminder notice using the same means as the original notice 30 days before the end of the Opt-in Period.

      g.     Within seven days after the end of the Opt-In Period, Plaintiffs' Counsel will file any timely received Consent to Join/Opt-In Forms on the docket.

      h.     Within 30 days after the close of the Opt-In Period, the Settlement Administrator shall make the following payments from the Settlement Account:

(i)     The Settlement Administrator shall (A) mail any Court-approved Service Award checks to Named Plaintiffs, and (B) wire attorneys' fees and litigation expenses to Plaintiffs' Counsel.

(ii)     The Settlement Administrator shall issue Settlement Payments, pursuant to the distribution formula in Section 3, above, via First Class U.S. Mail to each Participating Settlement Collective Member who timely returned a Consent to Join/Opt-In Form.

(iii)     The Settlement Checks shall be negotiable by the Participating Settlement Collective Members for 150 days from the date they were mailed by the Settlement Administrator (the "Check Cashing Deadline").  The face of each check shall clearly state that the check must be presented for payment within 150 days.

(iv)     Each Settlement Check paid to the Participating Settlement Collective Members shall also contain an endorsement which notifies the Participating Settlement Collective Member that by negotiating the check, they agree to the release of claims and are opting into the Action under the FLSA.

(v)     Within 14 days after the expiration of the Check Cashing Deadline, the Settlement Administrator will provide to Defendant's Counsel and Plaintiffs' Counsel: (a) scanned copies of the negotiated Settlement Checks, and (b) a list, in Excel format, of the names of all Participating Settlement Collective Members who negotiated their Settlement Checks including for each: (a) the amount of the Participating Settlement Collective Member's Settlement Check, (b) the amount of the Settlement Check allocated to wages, and (c) the amount of the Settlement Check allocated to liquidated damages.

(vi)     Any amount of the Net Settlement Fund that is not claimed by Participating Settlement Collective Members by the expiration of the Acceptance Period shall revert back to Defendant. The Settlement Administrator will return the funds to Defendant within twenty-eight (28) days after the Check Cashing Deadline.

## 5.     <u>RELEASE OF CLAIMS</u>

a.     Each Settlement Check shall contain, on the back of the check, the following endorsement:

**CONSENT TO JOIN AND RELEASE OF CLAIMS:**

By negotiating (i.e. cashing) this check, I release Softchoice Corporation and its affiliates and their respective officers and directors from all claims or causes of action I have for unpaid overtime wages, liquidated damages, and penalties under federal, state, and local law while I worked for Softchoice as a Territory Sales Representative between June 28, 2018 and October 31, 2021.  To the extent I worked in Washington, I also release claims for rest and meal breaks from June 28, 2018 through October 31, 2021.

b.     Participating Settlement Collective Members who timely return a Consent to

Join/Opt-In Form will release the Released Parties from all claims or causes of action they have for unpaid overtime wages, liquidated damages, and penalties under federal, state, and local law while they worked for Softchoice as TSRs between June 28, 2018 and October 31, 2021, and Washington Participating Settlement Collective Members who timely return a Consent to Join/Opt-In Form will also release claims for rest and meal breaks from June 28, 2018 through October 31, 2021.

      c.      Any Eligible Settlement Collective Member who does not timely return their Consent to Join/Opt-in Form will not be bound by any release of claims.

      d.      The Parties agree and acknowledge that they have engaged in settlement negotiations through their attorneys and agree that they have reached an agreement with respect to the Settlement, as documented in this Agreement. Each of the Parties further agrees and acknowledges that they have had the benefit of advice, investigation and/or recommendations with reference to the subject matter of this Settlement Agreement, and that the discovery of additional information or records relevant to this Action shall not be a reason to vacate or nullify this Settlement Agreement. The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties to its terms and conditions.

## 6.    **MUTUAL COOPERATION**

The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendant and its counsel, take all necessary steps to secure the Court's approval of this Agreement.

## 7.    **EFFECT OF NON-APPROVAL**

      a.      If, for any reason, the Court refuses to grant Approval of the material terms of this Settlement Agreement, the Parties shall work in good faith to modify the Settlement Agreement in order to obtain Court approval. If the Parties are unable to reach agreement to such modification, then this Settlement Agreement shall be null and void, and the agreements described in this Settlement Agreement shall be of no effect and inadmissible in this or any other action or proceeding.

      b.      The Parties agree that Defendant shall not need to file an answer to the complaint and that Plaintiffs will not contend that a failure to do so constitutes a default. The Parties further agree that in the event that the motion for approval is not granted and the parties are unable to reach a suitable new agreement, Defendant shall have 60 days from the time of that impasse to file an answer.

8.    **INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS**

a.    <u>Arm's Length Transaction</u>.  The terms and conditions of this Agreement are the result of lengthy, intensive, arm's-length negotiations between the Parties.  Accordingly, this Agreement is not to be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Agreement.

b.    <u>Good Faith Dealings</u>.  If the Court does not approve any material condition of this Agreement, the Parties will work together in good faith to address and resolve the concerns raised by the Court in denying approval of the Settlement.

c.    <u>No Assignment</u>.  Named Plaintiffs, and Plaintiffs' Counsel represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action, and any attempt to do so shall be of no force or effect.

d.    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

e.    <u>Captions</u>.  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

f.    <u>Governing Law</u>.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Illinois, without regard to choice of law principles, except to the extent that the laws of the United States govern any matter set forth herein, in which case such federal law shall govern.

g.    <u>Continuing Jurisdiction</u>.  Consistent with the terms of this Agreement, the Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

h.    <u>Waivers and Modifications</u>.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment with any required Court approval.  Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

     i.       <u>Notice</u>. The Settlement Notice will advise all Eligible Settlement Collective Members of the binding nature of the release and that by signing and submitting a Consent to Join/Opt-in Form they are bound by the release provisions in this Agreement.

     j.       <u>Counterparts</u>. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

     k.       <u>Signatures and Transmittal</u>.  Any Party may execute this Agreement by causing his/its counsel to sign on the designated signature block below and transmitting that signature page via facsimile, email or other electronic means to counsel for the other Party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

     l.       <u>Communications with Eligible Settlement Collective Member</u>.  The Parties, Plaintiffs' Counsel, and Defendant's Counsel shall not encourage or discourage any Eligible Settlement Collective Members from becoming Participating Settlement Collective Members. Named Plaintiffs, Plaintiffs' Counsel, and Defendant shall refrain from initiating communications with Eligible Settlement Collective Members regarding the Settlement. In the event any Collective Member initiates communication with Defendant or its managers, staff, Legal Department, and Human Resources Department regarding the Settlement, Defendant shall refer the individual to the Notice of Settlement or to the Settlement Administrator.

     m.       <u>Tolling Agreement.</u>  The Parties' tolling agreement will terminate on the date the Court approves the settlement (or if the Settlement Agreement is not approved, on the date the Settlement Agreement terminates).

     n.       <u>Publicity</u>.  The Parties agree that there will be no publicity of the settlement and expressly agree that neither Plaintiffs' Counsel or member of their firm, nor any Named Plaintiff, will announce any settlement terms to the media, issue a press release, or advertise it on social media or a website.

DATED: February 14, 2022 , 2021    **Braxton Griffin**

DocuSigned by:

*Braxton Griffin*

5A1842FA087E4DB...

DATED: February 15, 2022 , 2021    **Michael Cuaresma**

DocuSigned by:

34172D51F3B0463...

DATED: Feb 22, , 2021    **Softchoice Corporation**

-14-

DocuSign Envelope ID: 6D3B8B84-D8AF-4D86-8CCE-42ED3036D178

**Exhibit A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| **MICHAEL CUARESMA and BRAXTON GRIFFIN, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**SOFTCHOICE CORPORATION,**<br><br>**Defendant** | **Civil Action No.** |

**[PROPOSED] ORDER APPROVING COLLECTIVE ACTION SETTLEMENT**

The above-entitled matter came before the Court on Plaintiffs' Unopposed Motion for Approval of a Collective Action Settlement ("Approval Motion").

**The Settlement is Approved**

1.      The Court finds that the settlement in this Fair Labor Standards Act action is a fair and reasonable resolution of a bona fide dispute, and therefore, meets the requirements for approval.

2.      The settlement is approved, and the terms of the Parties' Joint Stipulation of Settlement and Release Agreement (the "Agreement") are incorporated by reference into this Order.

3.      The Court has reviewed and approves the Fair Labor Standards Act settlement as set forth in the Agreement. The terms of the Parties' Joint Stipulation of Settlement and Release Agreement are incorporated by reference into this Order.

A-1

4.      Plaintiffs' proposed Settlement Notice, Consent to Join/Opt-In Form, and procedure for their distribution of the settlement proceeds are approved.  The language to be included on the Settlement Checks, in the Settlement Notice and Consent to Join/Opt-In Form is approved, and Eligible Settlement Collective Members who timely return a Consent to Join/Opt-In Form will be bound by the release and are enjoined from pursuing the Released Claims.

5.      The Court approves the Service Awards for Michael Cuaresma and Braxton Griffin.

6.      The Court grants Plaintiffs' request for attorneys' fees and out-of-pocket costs and expenses.

7.      The Court approves Rust Consulting, Inc., as the Settlement Administrator.

8.      This case is dismissed without prejudice, with leave to reinstate on or before 60 days after the Effective Date, and in the event a motion to reinstate is not filed on or before 60 days after the Effective Date, the case shall be deemed, without further order or action of the Court, to be dismissed with prejudice.

9.      This Court will retain jurisdiction over this Action for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Joint Stipulation of Settlement and Release Agreement, including the distribution of the settlement funds.

10.      The Parties shall abide by all terms of the Joint Stipulation of Settlement and Release Agreement.

It is so ORDERED this ___ day of _____, 2021

_____
Hon.

A-2

<u>**Exhibit B**</u>

**[Date]**

**Via U.S. Mail, Email, and Text**
[Name]
[Street Address]
[City, State and Zip]

      **Re:**      **Softchoice Corporation Overtime Lawsuit – Notice of Settlement and Opportunity to Participate**

Dear [Name]:

      You are receiving this letter because on _____ _____, 2021, a federal court in Illinois approved a $1,800,000 settlement of a wage and hour lawsuit (the "<u>Lawsuit</u>") against Softchoice Corporation. ("<u>Softchoice</u>").  You may participate in the settlement because between June 28, 2018 and October 31, 2021, you worked for Softchoice as a Territory Account Executive 1, Territory Account Executive 1 Sr, Territory Account Executive 2, Territory Account Executive 3, Territory Account Executive 4, Territory Account Executive 4 Sr, Territory Account Executive 5, Territory Account Executive 5 Sr, Territory Account Executive Hunter 1, Territory Sales Representative 1, Territory Sales Representative 2, Territory Sales Representative 3, Territory Sales Representative 4, Territory Sales Representative 5, and/or TSD Hunter (hereinafter, "TSR").

      **To obtain your share of the settlement, you must execute or sign and return the Consent to Join/Opt-in Form by [insert date 60 days from the mailing] by mail or email. Your estimated individual settlement amount is $XX.**

      This letter explains the Lawsuit, the settlement, how to participate in the settlement, and the effect of submitting a completed Consent to Join/Opt-in Form by the deadline.

      **1.**      **What Is the Lawsuit About?**

      Former TSRs ("Named <u>Plaintiffs</u>") employed by Softchoice filed this Lawsuit alleging that Softchoice misclassified them as exempt employees and failed to pay them and other similarly situated TSRs overtime wages in violation of the Fair Labor Standards Act (the "<u>FLSA</u>").

      Softchoice denies that it violated the FLSA.  However, to avoid further dispute, protracted litigation, and related costs, Softchoice and the Plaintiffs have agreed to settle the Lawsuit.

      The Court presiding over this case has not made any rulings on the merits of the claims or defenses in the Lawsuit, and no party has prevailed.  Rather, the parties came to a mutually agreeable resolution which the Court has approved.

**2.      Does the Court Have an Opinion as to the Merits of the Lawsuit?**

This notice is for the sole purpose of providing you with objective and neutral information concerning your right to participate in the settlement. The Court takes no position regarding whether or not the claims made in the Lawsuit have legal merit.

**3.      How Was My Settlement Payment Calculated and What Does it Represent?**

Softchoice has agreed to pay a total of $1,800,000 to settle the Lawsuit for 192 TSRs, which is the Gross Settlement Amount.  From that amount, the following payments are being made: Plaintiffs' attorneys' fees in the amount of $600,000 and costs up to $12,500; $14,950 to the Settlement Administrator; and payments to the two Named Plaintiffs in the amount of $7,500 each for the time and effort associated with their participation in the Lawsuit.  The remaining amount will be distributed among current and former TSRs who worked for Softchoice between June 28, 2018 and October 31, 2021.  The settlement does not release claims accruing after October 31, 2021.

Your payment was calculated by taking the overtime wages that were calculated to be allegedly owed to you under the formula provided in the Settlement Agreement and by dividing that number by the total amount calculated to be owed to all TSRs who are eligible to participate in the settlement.  The result is your ratable share of the Net Settlement Fund.

**If you have questions about your settlement amount, contact the Settlement Administrator identified below in Paragraph 8**.

**4.      How Do I Participate in the Settlement?**

To participate in the settlement, you must sign and return the enclosed Consent to Join/Opt-In Form on or before [insert date 60 days from the mailing].  You may sign this electronically via the link sent to you by email or text, or sign the enclosed Consent to Join/Opt-In Form and mail/email it back to the Settlement Administrator at the contact information below: [insert Settlement Administrator contact info]

**5.      Will I Owe Taxes on a Settlement Payment if I Participate?**

Your individual settlement payment has been separated into two equal amounts: 50% has been allocated to the claims asserted in the Lawsuit for unpaid overtime wages, and 50% has been allocated to the claims asserted in the Lawsuit for liquidated damages.  The portion allocated to unpaid overtime wages is subject to all authorized or required payroll tax deductions, just as if it were a regular paycheck, and it will be reported on an IRS Form W-2, provided to you by the Settlement Administrator.  The portion allocated to liquidated damages will be reported as non-wage income on an IRS Form 1099, provided to you by the Settlement Administrator.  Softchoice will pay only the employer's share of applicable state and federal payroll taxes on the wage portion of your payment.  Normal employee payroll taxes have been deducted from the wage portion of your payment.  Neither Plaintiffs' Counsel nor Softchoice or

its counsel makes any representations to you concerning the tax implications of the settlement payment. **Please consult with your accountant or other tax advisor regarding the tax consequences of the settlement amount paid to you.**

### 6. What are My Options?

**Participate in the Settlement**. If you return a signed Consent to Join/Opt-In Form by [insert date 60 days from the mailing], you consent to join the Lawsuit. By joining the Lawsuit, you agree to release Softchoice plus its parents, subsidiaries, affiliates, predecessors, successors, and any other entity related to it and all of its past and present directors, officers, employees, and anyone else acting for any of them from all claims or causes of action you have for unpaid overtime wages under the FLSA or any other federal or parallel state and local laws concerning the payment of wages, liquidated damages, attorneys' fees and costs, penalties, expenses, and interest while you worked for Softchoice as a salaried TSR between June 28, 2018 and October 31, 2021, and will be enjoined from bringing such claims.

If you return a signed Consent to Join/Opt-In Form in time, within 14 days after [insert date 60 days from the mailing], the Settlement Administrator will mail your settlement award check to you.

Please note that the check contains the following language, which verifies your agreement to join the Lawsuit for purposes of the settlement and to waive and release any alleged overtime and other claims alleged in the Lawsuit:

*CONSENT TO JOIN AND RELEASE OF CLAIMS*:

By negotiating (i.e. cashing) this check, I release the Softchoice Corporation from all claims or causes of action I have for unpaid overtime wages, liquidated damages, and penalties under federal, state, and local law while I worked for Softchoice as a Territory Sales Representative between June 28, 2018 and October 31, 2021. To the extent I worked in Washington, I also release claims for rest and meal breaks from June 28, 2018 through October 31, 2021.

**Do nothing**. If you do not return a signed Consent to Join/Opt-In Form by [insert date 60 days from the mailing], you will not participate in the settlement. You will not receive any money from this settlement. You will not release any overtime claims or lawsuits you may have against Softchoice.

### 7. What Happens if My Address Changes Before I Receive my IRS Tax Forms?

If your address changes before you receive your IRS tax forms, it is your responsibility to inform the Settlement Administrator, at the following phone number or address: [insert]

### 8. Are There More Details Available?

DocuSign Envelope ID: 6D3B8B84-D8AF-4D86-8CCE-42ED3036D178

Yes. This notice summarizes the basic material terms of the settlement. If you have questions about the settlement or your settlement payment, you may contact the Settlement Administrator at [1-800-NUMBER] or Plaintiffs' attorneys at:

Sally J. Abrahamson
Werman Salas P.C.
Email: sabrahamson@flsalaw.com
Phone: (312) 419-1008

**Do not contact the Judge or the Court Clerk or Softchoice's attorneys about this settlement.**

Any questions regarding the tax implications of the settlement payment should be directed to your tax professional. Any questions about the settlement should be directed to the Settlement Administrator or Plaintiffs' attorneys.

4867-9188-6600.2 / 092407-1007

DocuSign Envelope ID: 6D3B8B84-D8AF-4D86-8CCE-42ED3036D178

<u>**Exhibit C**</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL CUARESMA and BRAXTON GRIFFIN, individually and on behalf of all others similarly situated,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No.** |
| **SOFTCHOICE CORPORATION,** | |
| **Defendant.** | |

**CONSENT TO JOIN/OPT-IN FORM**

I received the Notice of Settlement and Opportunity to Participate, which informed me that I will receive a payment if I return this Consent to Join/Opt-In Form so that it is received by the Settlement Administrator by [DATE].

By signing and returning this Consent to Join/Opt-In Form, I release the Softchoice Corporation from all claims or causes of action I have for unpaid overtime wages, liquidated damages, and penalties under federal, state, and local law while I worked for Softchoice as a Territory Sales Representative between June 28, 2018 and October 31, 2021 and will be enjoined from bringing such claims. To the extent I worked in Washington, I also release claims for rest and meal breaks from June 28, 2018 through October 31, 2021 and will be enjoined from bringing such claims.

_____          _____
Name (print First Last)                                       Signature

_____
Mailing Address          Street                          City               Apt.             Zip Code

_____
Cell Phone

_____@_____._____          _____, 2021
E-Mail                                                                                   Date

Return to:

C-1

4867-9188-6600.2 / 092407-1007

DocuSign Envelope ID: 6D3B8B84-D8AF-4D86-8CCE-42ED3036D178

**Must be emailed or postmarked by [insert date 60 days from the mailing].**